DODSON, et al. *v.* McELREATH.

Division B. Dec. 4, 1950.

No. 37648 (48 So. (2d) 861)

A. C. Muir, and James Stone & Sons, for appellants.

J. W. Price and J. W. T. Falkner, for appellee.

Roberds, P. J.

Appellants filed the bill in this cause to set aside, for fraud in its procurement, a contract under which they purchased from appellee a stock of groceries, the fixtures and a grocery and gasoline service station business located at Oakville, Tennessee, and to recover the purchase price and damages, actual and punitive. When complainants rested their case the Chancellor, on motion of defendant, excluded the evidence of complainants and dismissed the bill. Appellants assign that action as error.

It is the contention of complainants that, as an inducement to them to enter into the contract of purchase, McElreath represented to them that he had a lease upon the premises where the business was being conducted until July, 1947, with right of renewal for two more years; that this induced them to buy the property and the business, which they otherwise would not have done; that this representation was false; that in truth McElreath was a tenant at will of the premises, paying as rent therefor one cent a gallon for the gasoline sold at this station, with the right in either party to terminate the tenancy at pleasure; that they learned the true facts after closing the deal and moving upon the premises and taking

charge of the business, and that they were ejected from the premises in November after the purchase May 2, 1946.

McElreath, while denying the asserted fact that he made such representations, concedes, as a legal proposition, that if he did make them they constituted fraud, provided he agreed to, or he did, assign, as a part of the purchase agreement, a lease upon the premises. He says he did neither; but further contends that even though such representations were made and they were false and he was only a tenant at will (which was the fact) no legal liability rests upon him because he did not assign or agree to assign a lease on the premises.

The first question is, does this record show that McElreath represented to the Dodsons, as an inducement to them to enter into this contract of purchase, that his present real estate lease ended July 1; that he had a new lease for a year beginning at that time with right to renew it for two years? The evidence bearing upon that question is this:

Mrs. Dodson and a representative of the Real Estate Agency went to the place of business on the afternoon of May 1, 1946. They looked over the stock of goods, fixtures, living quarters, etc., and discussed the matter with McElreath. That night Mr. and Mrs. Dodson went back out to Oakville and again looked over the situation and discussed the trade with McElreath. There was a tentative understanding they would purchase the business for five thousand dollars. They met at the office of Sadler Realty Company the next day for further discussion and the closing of the trade. However, before entering into a contract the Dodsons asked about the lease on the premises. They testified that McElreath then represented he had the leases above described, and, when asked for their production, McElreath said they were in his lock box at the Bank; that Clark, of the Real Estate Agency, as did also McElreath, urged that since the contract was prepared and they were all together, to

go ahead and execute the contract and the lease could be delivered later, and that this was agreed upon, and the contract of purchase was then executed, and the purchase price paid. McElreath, called by complainants as an adverse witness, said a lease was mentioned but that the lease he had in mind and which was in his bank box was a lease with Shell Oil Company upon the gasoline tank, pumps, and equipment at the station used in selling Shell products. Mr. Muir, an attorney, testified that after the Dodsons were ejected he, with Mr. Dodson, went to see McElreath, who had then moved to Oxford, Mississippi, and he put the inquiry to McElreath as to whether he made the representations about the real estate lease and McElreath said he did not remember. McElreath said he denied to Muir and Dodson he had so represented the lease. In connection with McElreath's statement that his remarks about a lease had reference to his equipment lease, it is relevant to observe that this lease was for a period beginning November 26, 1945, and ending November 25, 1946, with the right in either party to terminate it upon giving ten days written notice. So if he said his present lease was until July, and that he had another for a year, with right of renewal for two more years, he could not have been referring to the equipment lease.

The great preponderance of the evidence supports the conclusion appellee did make the representations. But as bearing on that question of fact circumstances may also be considered. Those circumstances are that the Dodsons were then about to purchase a going business they knew was being operated upon leased premises, and upon which premises they expected to live. They knew, as ordinarily sensible people, that to be shortly ejected would be disastrous to them. It would have been utterly foolish for them to have paid out this money in purchase of the property without the assurance of continued occupancy of the gasoline station, living quarters and the lot upon which they were located. Indeed, the testimony

of the Dodsons is to the effect that the value of the stock of goods and fixtures delivered to them was approximately $1300. McElreath himself placed a total value thereon of around $3800. In any event, the difference between the actual value of the property sold and the price paid therefor can be accounted for only upon the value of an established continuing business. In this state of the record the Chancellor made no finding upon the disputed fact now under consideration. We hold, upon the record before us, and for the purpose of this opinion, that the great preponderance of the evidence establishes that McElreath did make the asserted representations. This in no way concludes the question under the evidence which may be adduced on another trial.

The second, and more troublesome question, is whether McElreath transferred and assigned to the Dodsons a lease on the premises. To determine that we must look to the circumstances surrounding the parties and to the terms of the bill of sale McElreath executed. We have already alluded to the circumstances. Here we might only emphasize that the value of this business was largely in the right to continue it at its established location, and the Dodsons expected to live there and continue to operate the business as a gas station and mercantile establishment. Now, the bill of sale acknowledges receipt of the five thousand dollars, and recites ''That I, Dock H. McElreath of Oakville, County of Shelby, State of Tennessee . . . do hereby grant, sell, transfer and deliver unto Grace A. Dodson and Franklin E. Dodson the following property, to-wit: All right, title and interest in the goodwill, and in the stock, furniture and fixtures, located in the premises on Highway 78 in Oakville Tennessee same being operated as a Shell Service Station by Dock H. McElreath . . .''. It then itemizes the furniture and equipment, and continues ''Possession of living quarters to be given within ten days from this date I, Dock H. McElreath do hereby declare that there are no debts or obligations against this

business, that I may rightfully sell this business as a lessee under those terms and conditions that I now enjoy.'' It will be noted this instrument embodies three pertinent expressions bearing upon whether this was a transfer of lease by McElreath on the premises—first it refers to the fact that the business was a going concern; he said it was being ''operated'' as a service station; second, it conveyed the goodwill of that business, and, third, that he had the right to transfer and assign the business as ''lessee''.

Keeping in mind the circumstances, yet considering now only the terms of the lease, it conveyed the goodwill of the business. The books are full of definitions of goodwill. The narrowest is, ''The probability that the old customers will resort to the old place.'' That definition has been rejected by the great weight of authority in the light of present-day conditions. A later definition was announced by Vice Chancellor Wood to the effect that goodwill includes every positive advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, with the name of the old firm, or with any other matter carrying with it the benefit of the business of the old firm. A more comprehensive definition was stated by Judge Story as ██ █ the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. In re Brown's Will, 242 N. Y. 1, 150 N. E. 581, 44 A. L. R. 510; 24 Am. Jur. 802, Sec. 2; Anno. 82 A. L. R. 1030. The second definition has been accepted by a majority of the courts. However, while it is seen that many elements are included within all the definitions, the chief

elements are continuity of place and continuity of name. Yost v. Patrick, 245 Ala. 275, 17 So. (2d) 240. However, we have been cited to no case, and our research has not disclosed one, holding that the mere transfer of goodwill is an assignment of the lease on the real property, although some of them have come close to so holding. Vonderbank v. Schmidt, 44 La. Ann. 264, 10 So. 616, 15 L. R. A. 462; Fine v. Lawless, 139 Tenn. 160, 201 S. W. 160, L. R. A. 1918C, 1045; Collas v. Brown, 211 Ala. 443, 100 So. 769. We do not so hold, nor is it necessary that we adopt any particular definition. It was announced in Whitman v. Jones, 322 Mass. 340, 77 N. E. (2d) 315, that no specific rule can be laid down to govern all cases but that each case must be decided in the light of its particular facts and circumstances. We here discuss the effect of assignment of goodwill because of its bearing upon the effect of the provision in this bill of sale which we next consider.

The seller conveyed ''this business as a lessee under those terms and conditions that I now enjoy''. Did that, under all the circumstances here involved, assign his lease upon the premises? We think so. None of the physical property conveyed by him was under lease. He did not mention the Shell pumps or underground tanks. His reference to his rights as lessee could only have had reference to his real property lease. The negotiations, as well as the terms of the bill of sale, contemplated not only a continuation of the business at the same place, but also that the purchasers would reside therein as their living quarters and home. He assigned such real property lease as he had but, according to the great preponderance of the evidence before us, he represented his then lease lasted until July thereafter, and that he had another for a year, with right of renewal for two more years. ▉▉ ▉ That, by virtue of reason and common sense, as well as the specific testimony on behalf of appellants, constituted a very material inducement to them to purchase this property—in fact, but

for which they would not have purchased it—entitling them to appropriate relief as the record now stands before us. Brown v. Ohman, Miss., 43 So. (2d) 727, 733. The law of Tennessee, by which the rights of the parties hereto are to be tested, is the same as that of Mississippi. Brown v. Ohman, supra. What the evidence may establish when the cause is fully tried and developed is not before us. We are considering the cause under a motion of defendants to exclude, having in mind the rules pertaining to that procedure.

Reversed and remanded.