14 N.J. Super. 30 (1951)
81 A.2d 369
BEATRICE MINOFF, PAUL HOFFMAN, AND JOHN N. PLATOFF, EXECUTORS OF THE ESTATE OF JACK MINOFF, DECEASED, APPELLANTS,
v.
WALTER T. MARGETTS, STATE TREASURER, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT. IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF JACK MINOFF, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1951.
Decided May 18, 1951.
*33 Before Judges FREUND, PROCTOR and ROGERS.
Mr. Harold Kolovsky argued the cause for the appellants (Messrs. Platoff & Platoff, attorneys).
Mr. William A. Moore argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General of New Jersey, attorney).
*34 The opinion of the court was delivered by PROCTOR, J.S.C.
This is an appeal by the executors of the estate of Jack Minoff, deceased, from a transfer inheritance tax assessment by respondent. The appeal is from respondent's determination that on Jack Minoff's death his 1/30th interest in a partnership, known as Fountainhill Underwear Mills, passed under the terms of the partnership agreement, dated November 30, 1943, to the surviving partners at a price less than its market value and that such difference, therefore, was taxable at 8%.
Jack Minoff had died testate on October 21, 1947, a resident of this State. By his will he made a number of specific bequests without mentioning his partnership interest and then left his residuary estate in trust for his widow and two children.
Appellants contend that the value of decedent's interest, which included his proportionate share in the good will of the partnership, passed to the residuary trusts created under the will, a transfer to which the 1% rate is applicable.
Under the partnership agreement there were five general and six limited partners. The general partners were divided into two units: Harry Thoens and Albert R. Thoens, comprising one unit; Jack Minoff, Harry Liberman and Paul Meislin, comprising the other. The pertinent provisions of the agreement are paragraphs seven and seventeen. The seventh paragraph states:
"Seventh: (a) In the event of the death of any general partner during the time fixed for the continuance of this partnership, this partnership shall not be thereby dissolved, but shall be continued by the survivors. The interest of such deceased general partner shall terminate as of the first day of the calendar month next succeeding his death, and the value of the interest of such deceased partner in the partnership shall be determined as of such date, and such interest, as so determined, shall be liquidated and the amount thereof paid or disposed of as is provided in paragraph `Seventeenth' hereof."
Paragraph seventeen contains five sub-paragraphs designated alphabetically. Sub-paragraph (a) deals with the *35 eventuality of the death of either of the general partners making up the first unit, namely, Harry Thoens and Albert R. Thoens, "parties of the first and second parts." Sub-paragraph (b) deals with the eventuality of the death of one of the three general partners comprising the second unit, namely, Jack Minoff, the present decedent, Harry Liberman and Paul Meislin, "parties of the third, fourth and fifth parts." Sub-paragraphs (b) to (d), omitting parts unimportant to the present problem, are as follows:
"(b) In the event of the death of either of the parties of the third, fourth and fifth parts, the fact of such death shall be deemed to be an offer by such decedent and his personal representative to the survivors of the said parties of the third, fourth and fifth parts to sell the interest of the decedent in said co-partnership in equal proportions, * * *.
The survivors of the parties of the third, fourth and fifth parts * * * shall have thirty days from the date of the appointment of a personal representative * * * within which to determine whether or not they will accept such offer * * *. * * * The purchase price thereof shall be the book value of the interest of the decedent determined as set forth in this agreement. In the event that the said survivors of the parties of the third, fourth and fifth parts shall not desire to purchase the interest of such deceased party, then the said interest shall be deemed to be offered to the parties of the first and second parts * * *. * * * The purchase price thereof shall be the book value of the interest of the decedent determined as set forth in this agreement, and in the event that the said first and second parties shall elect not to purchase or acquire the interest of such deceased party, then such interest shall be liquidated by the co-partnership, and the interest of the deceased party retired, and the surviving partners shall thereafter continue the co-partnership for the remainder of the unexpired term of this agreement.
(c) The book value, for the purpose of this agreement, shall be the proportionate share of the decedent in the net worth of the co-partnership as of the end of the month next following the death of such decedent, prepared in accordance with the general accounting practice of the company, * * *, and without any valuation or allowance for good will, trademarks, tradenames, or other intangible assets, all of which are specifically excluded in the determination of the net worth, * * *.
(d) The purchase price to be paid for the interest of such deceased partners, as herein provided, shall be paid to the personal representative of the deceased party by the purchasers within thirty days after the acceptance of the offer, provided, however, that if *36 the interest of decedent is liquidated by the co-partnership payment of the purchase price or liquidation value shall be made in six (6) equal monthly installments. * * * In the event that the interest of any decedent shall be liquidated by payment of such share out of partnership assets, then the shares of profits and losses of the remaining partners shall be readjusted in proportion to their then remaining proportions of profits and losses."
Sub-paragraph (e) has no application to the present case.
Appellants first contend that decedent's interest in the good will of the partnership did not pass to the surviving partners. Under paragraph seven of the partnership agreement, upon the death of Jack Minoff, his interest in the partnership came to an end on the first of the next succeeding month; the aforesaid interest was to be "liquidated" and the amount thereof paid as provided in paragraph seventeen. Under paragraph seventeen, both options therein mentioned not having been exercised, it became obligatory on the partnership to liquidate and retire such interest. It is apparent, therefore, that under the agreement the decedent's interest in the partnership, including the good will, passed to the partnership.
Appellants next urge that, under the provisions of the partnership agreement for liquidation of decedent's interest by the partnership, the consideration to be paid is the full value thereof, including the value of the good will.
Paragraph seventeen gives options to the surviving general partners, as units, to purchase a deceased general partner's interest, and the price to be paid is fixed at the book value or net worth, exclusive of the value of the good will. The same paragraph further provides that if both units fail to purchase under the options given them, then such deceased partner's interest "shall be liquidated by the co-partnership." The word "liquidated" has several meanings, such as "ascertained, determined, fixed, settled, paid, discharged." Canda v. Canda, 92 N.J. Eq. 423, 426 (E. & A. 1921); Black's Law Dictionary. There is nothing in the agreement which indicates that the price to be paid by the surviving general partners, acting in concert and constituting the copartnership, *37 should exceed the price to be paid by the same general partners as members of the two units under the options. The intendment is clearly otherwise.
Appellants concede that decedent's partnership interest, as of the date of his death, had a value of $29,502.17, of which $14,898.90 represented decedent's 1/30th interest in the good will of the partnership business. Under the agreement the partnership obtained this interest in the good will without paying any consideration therefor so that the partnership acquired decedent's entire partnership interest at a valuation less than the true value. The transfer in the present case comes within the scope of R.S. 54:34-1(c) as a "grant," "bargain" or "sale." It was intended to take effect in possession or enjoyment at or after the death of Jack Minoff, and, to the extent that the consideration is less than the agreed value, it is taxable under the act. Schroeder v. Zink, 4 N.J. 1 (1950); In re Deutz, 105 N.J. Eq. 671 (Prerog. 1930).
It is next argued by appellants that the provision for the transfer of a deceased partner's interest without allowance for good will constituted a mere offer of a gift to the surviving general partners, which was refused by them inasmuch as decedent's estate has continued to receive its proportionate share of the partnership profits.
The agreement provided that upon the death of a general partner, instead of dissolving the partnership and distributing the assets, the partnership was to be continued by the surviving partners who were to retain the assets and pay the estate for them. The death of Jack Minoff not only effected a termination of his interest in the partnership, but, after the options were not exercised by the respective units, also effected a sale of his interest to the partnership. The estate of decedent obtained only a right to receive payment for such interest at a price fixed in the formula provided in the partnership agreement. It was within the power of the partners to fix, in the articles of partnership, the valuation of the interest of a partner in the event of his death. *38 Michaels v. Donato, 4 N.J. Super. 570, 577 (Ch. Div. 1949). The transfer, effective under the terms of the partnership agreement on "the first day of the calendar month next succeeding his death," is taxable. Therefore, the fact that decedent's estate has received its proportionate share of the profits of the partnership since decedent's death is immaterial. Such arrangement, of necessity, was made after decedent's death and after the transfer of his interest to the surviving partners who, having the beneficial title, could do with it as they desired. Borish v. Zink, 2 N.J. Super. 42 (App. Div. 1949).
It appears that respondent decided that decedent had a 1/30th interest in the assets of the partnership, other than good will, and a 1/28th interest in the good will. The respondent, in arriving at this conclusion, determined that, prior to decedent's death, Meyer Minoff, a limited partner holding a 1/15th interest in the partnership, had died and his interest in the good will of the partnership passed to the then surviving partners; that although the estate of Meyer Minoff, as a limited partner, continued to receive the decedent's share of the partnership profits, it had no interest in the partnership good will, notwithstanding it had a 1/15th interest in other partnership assets. It will be noted that respondent admits that the estate of Meyer Minoff, as a partner, continued to receive the same share of the partnership profits as was received by Meyer Minoff in his lifetime. The estate could only be admitted to partnership by agreement, express or implied, of the surviving partners. See Borish v. Zink, supra. Upon the acceptance by the surviving partners of the estate as a partner, that portion of the good will that passed to the partnership upon the death of Meyer Minoff was transferred to his estate, so that, thereafter and at the time of the death of Jack Minoff, the relative interests of the several partners in the assets, including the good will, remained as they were before the death of Meyer Minoff.
We conclude that the assessment should be on decedent's interest of 1/30th of the value of the partnership *39 assets, that 1/30th of the value of the partnership assets, other than good will, passed to the residuary trusts, that 1/30th of the value of the good will assets passed to the surviving partners, and each should be taxed accordingly.
As herein modified the assessment is affirmed.