415 P.2d 667

A. Rulon JACKSON, Plaintiff
and Appellant,

v.

Grant R. CALDWELL et al., Defendants
and Respondents.

No. 10389.

Supreme Court of Utah.

June 21, 1966.

George M. McMillan, Salt Lake City, for appellant.

Pugsley, Hayes, Rampton & Watkiss, Edward M. Bown, Salt Lake City, for respondents.

NELSON, District Judge.

This is an action in which the plaintiff-appellant claims the defendants-respondents unlawfully and wrongfully appropriated good will inherent in the relationship between a firm of public accountants and their clients, of which he was a member, and, upon dissolution failed to account to plaintiff for his share of two partnership assets, to-wit:

(a) The good will in the client-public accountant relationship, and

(b) Work in process at the time of termination of the firm.

Plaintiff claims alternatively that he is entitled to damages for breach of a written agreement dated March 7, 1960.

The lower court held that the conduct of the defendants toward the plaintiff was not tortious; that defendants were not guilty of any breach of contract; that there was no good will inherent in the relationship between the firm of public accountants known as Messina, Caldwell & Co. and their clients, and the court adopted defendants' theory of allocation of the asset known as work in progress. Plaintiff seeks reversal of the judgment of the District Court.

The record discloses the plaintiff was, during the period relevant to this litigation, a public accountant. He was also an attorney. However the evidence in this case and the matters in issue relate only to his rights and property interests as a partner in the firm of Messina, Jackson, Caldwell & Company, Public Accountants.

Prior to the commencement of this action the plaintiff, defendants and Marco Messina, now deceased, were engaged as a partnership of public accountants under the name of Messina, Jackson, Caldwell & Company. The partnership agreement bore the date of April 1, 1958 and was amended April 1, 1959. This agreement provided that in the event of the death of said Marco Messina, who was then ill, the partnership would nevertheless continue until the close of the second fiscal year after the fiscal year in which such death occurred, and that the estate or heirs of the decedent would be entitled to the same participation in the income and profits between the date of death and the effective date of termination of the partnership as the decedent would have received had he continued to live and participate in the partnership. The said partnership conducted business on a fiscal year basis commencing April 1 through March 31 of the following year. Marco Messina died on August 16, 1959.

After the death of Messina, plaintiff and defendants continued to operate the partnership under the name of Messina, Jackson, Caldwell & Company pursuant to the terms and conditions of the partnership agreement of April 1, 1958 as amended April 1, 1959 until the end of the second fiscal year after the fiscal year in which the death of Messina occurred, March 31, 1962.

Subsequent to the death of Messina discontentment arose among the partners and employees regarding management. Beginning in January 1961 meetings were held in an effort to solve the problems, but to no avail. During the meetings plaintiff was advised by Mr. Caldwell that with respect to the partnership he could have any account in the office, or any employee, and he could have the office space then under lease. Plaintiff rejected these offers and continued to devote much of his time to his own personal matters. Thereafter plaintiff gradually on his own volition withdrew from active partnership participation.

Defendants gave plaintiff formal written notice of the termination of the partnership as of March 31, 1962 by instrument dated April 3, 1961. Following receipt of this notice plaintiff and defendant, Grant R. Caldwell, agreed that upon the termination of the partnership on March 31, 1962, the clients and accounts were to be allowed to follow the accountants of their choice; that no solicitation of clients or accounts would be made by any party and that the situation would remain in the status quo until March 31, 1962. The record does not show any solicitation by the defendants.

Mr. Paul J. Maxwell was an employee of the old partnership. He and the plaintiff formed a business relationship during the first part of January 1962, some three months prior to the termination of the old firm. Immediately thereafter Maxwell terminated his employment with the old partnership, took certain clients and accounts and their files and records with him, which he and plaintiff used after formalizing their business relationship into a partnership to function as a public accounting organization in May 1962.

Immediately upon the termination of the old partnership, March 31, 1962, plaintiff and defendant, Caldwell, met and agreed upon a division of the assets of the said partnership. This division was approved by the other defendants. Plaintiff immediately thereafter removed all of those items selected by him, including the files and working papers of those clients and accounts of the old partnership who chose to go with him and not theretofore taken by the plaintiff or Mr. Maxwell, from the offices of the old partnership to the offices of Jackson, Maxwell & Co., Public Accountants.

At the time of the division, plaintiff did not mention or make any reference to any breach of any contract, did not assert, nor was there any showing made that he was permanently disabled.

Defendants, certain employees, and Mr. Nicholas Rhodes, a former individual practitioner, formed a new business relationship to service those clients and accounts of the old partnership who chose to go with them rather than with plaintiff and Maxwell.

Certain work in process remained unfinished as of March 31, 1962, with respect to certain clients and accounts who chose to go with defendants, which has been completed. As soon as this was accomplished Grant R. Caldwell prepared a detailed accounting and furnished the plaintiff said accounting. Concurrently with such report, defendant Caldwell requested plaintiff to furnish defendants with an accounting with respect to those accounts and clients which belonged to the old firm and who had chosen to go with plaintiff. Plaintiff has failed to furnish such accounting.

At the time of the trial the plaintiff was ill and incapacitated as a witness.

The foregoing is a recitation of the facts as found by the trial court.

Upon such findings the District Court found for the defendants as hereinbefore stated.

Plaintiff bases his argument for a reversal of the trial court judgment on five points. The first four may be combined into one inclusive question. Did the trial court commit error in holding the plaintiff failed to establish by a preponderance of the evidence that the partnership of Messina, Jackson, Caldwell & Company had an asset of good will, in which plaintiff would be entitled to share?

■ In answering this question we must first determine the meaning of the term "good will." It is generally understood that good will is a transient intangible something connected with a business. It is not corporeal property, but rather an asset without physical form, an element responsible for profits in the business.[1]

■ The "good will" value of any business enterprise is that value which results from the probability that old customers will continue to trade or deal with the members of an established concern. It is the probability that old customers will resort to the old place or seek old friends, and the likelihood of new customers being attracted to well advertised and favorably known services or goods.[2]

■ Good will is the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds or property employed therein, in consequence of the general patronage and encouragement which it receives from constant or habitual customers on account of its location, or local position or reputation for quality, skill, integrity or punctuality.[3] It is something in business which gives reasonable expectancy of preference in the race of competition.

■ Good will is property, so recognized and protected by law. As such it is subject to bargain and sale. There has been a rather general acceptance by the courts that good will exists as property incidently to other property rights and is not susceptible of being owned and disposed of separately from property rights to which it is an incident.[4]

The case at bar presents questions which may call for a variation or modification of the rules as stated. It appears that the substantial weight of authority in this country

1. O'Hara v. Lance, 77 Ariz. 84, 267 P. 2d 725, 727.

2. Lima Tel. & Tel. Co. v. Public Utilities Commission of Ohio, 120 N.E. 330, 98 Ohio St. 110; Dodson v. McElreath, 210 Miss. 160, 48 So.2d 861.

3. Haverly v. Elliott, 39 Neb. 201, 57 N.W. 1010. In re Witkind's Estate, 167 Misc. 885, 4 N.Y.S.2d 933.

4. Yost v. Patrick, 245 Ala. 275, 17 So.2d 240.

is to the effect that no value can be attached to the good will of a professional partnership, although there are cases to the contrary based upon particular facts and circumstances.

This court has heretofore held that simply because each of the parties had the right to continue separate businesses after dissolution it did not mean that there could not be good will which attached to a business of a firm during its existence,[5] and insofar as the good will had a transferable value it belonged to all the partners, and any could insist upon his share of the benefit attached to it. But we have not held, nor do we now hold, that such right of good will is necessarily created or that it exists in every partnership as a joint asset. It is always possible and desirable for the parties to amicably settle their differences and make division of assets upon dissolution.

■ We subscribe to the general rule as stated in 40 Am.Jur. Partnership, Section 271, page 316:

"The general rule is that a professional partnership the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians has no 'good will' to distribute as a firm asset on its dissolution."

5. Vercimak v. Ostoich, 118 Utah 253, 221 P.2d 602.

We are of the opinion, and so hold, the same rule applies in a partnership of public accountants, unless the parties have in their partnership agreements provided otherwise, or the facts and circumstances of the particular case would require a modification of the general rule.

It has repeatedly been held there can be no "good will," so called, of a business which depends for its existence upon the professional qualities of the persons who carry it on.

■ Good will cannot arise as an asset of a partnership where the parties only contribute, as capital, their professional skill and reputation, however intrinsically valuable these may be.[6]

In the case at bar the trial court found the partnership did not list good will among the assets of the partnership. It further noted that the Uniform Partnership Act, 48-1-37, U.C.A.1953, does not contain any requirement that a valuation shall be assigned to good will upon dissolution. It appears the prevailing view is that a professional partnership, upon its dissolution, has no good will to be accounted for as an asset in the absence of a provision in the partnership agreement relating to good will, and this applies to a partnership of certified public accountants as well as to

6. Masters v. Brooks, 132 App.Div. 874, 117 N.Y.S. 585; Sheldon v. Houghton, 21 Fed.Cas. p. 1239.

a partnership of attorneys or physicians.[7] Further, the law, upon the dissolution of a co-partnership, nothing being agreed as to the disposition of the good will of the business, permits the respective parties to use what good will remains as will best subserve their several interests.[8]

The lower court found as a fact that the plaintiff, both before and after the dissolution of the Messina, Jackson, Caldwell & Company, solicited the clients and accounts of that firm for his own use and benefit. The court further found that Caldwell had promptly accounted to the plaintiff as to assets, etc., and defendants had not solicited or taken the entirety of the clients of the former partnership, but actually had refrained from solicitation, all pursuant to their agreement with the plaintiff.

█ It appears to this court that where the partners had concurred in the practice of not carrying good will as an asset on the partnership books and had determined the assets upon dissolution without reference to good will; and where there has been insufficient showing that the partnership agreement contemplated that it should be included in computing book value as in this case that it is proper to exclude good will as an item requiring an accounting of one party to another.[9]

7. Cook v. Lauten, 1 Ill.App.2d 255, 117 N.E.2d 414.

8. 40 Am.Jur.: Partnership, § 270, p. 315, 47 A.L.R.2d 1429.

█ We conclude the weight of the evidence preponderates that under the facts and circumstances of this case there was no intangible asset of the old terminated partnership of Messina, Jackson, Caldwell & Company in the form of good will for which the defendants are responsible for or accountable to the plaintiff, and the District Court was correct in so finding.

█ The plaintiff has contended further that after the death of Messina, he, the plaintiff, became ill and unable to render effective service to clients, and defendants knew of such condition; and Caldwell in particular took advantage of this situation in influencing clients. The record does not justify such a conclusion. The District Court found that the accounts did not tend to go with one or the other of the parties to the exclusion of any one, but rather tended to follow the particular partner or employee of the partnership who had been serving that client or account. The record further discloses the plaintiff carried with him accounts and clients upon his departure. There is a showing that Caldwell actually urged a profitable client to go with the plaintiff.

The trial court further found the plaintiff had become disabled and disqualified

9. Re Witkind's Estate, 167 Misc. 885, 4 N.Y.S.2d 933; Minoff v. Margetts, 14 N.J.Super. 30, 81 A.2d 369, cert. den. 7 N.J. 584, 83 A.2d 381.

thereby after the termination of the partnership in question.

Point V of plaintiff's brief states:

"The Lower Court erred in failing to find and determine alternatively that Plaintiff was entitled to recover damages for a breach of contract between the Parties dated March 7, 1960."

It appears this contract provided that in the event of the permanent disability of any of the parties thereto the remaining parties shall continue to maintain the business with the disabled member continuing to receive his share of the income and profits of the firm for the fractional year in which the permanent disability occurred and for two fiscal years thereafter. It further provided that in the event any able partner took advantage of this situation and would take business to himself in competition with the partnership and keep the earnings thereby obtained would be required not only to make a proper accounting of such work and income in which the disabled party would be entitled to his share, but such party would be required to pay an additional sum of $500 for each violation of his covenant plus one-half of any compensation derived from rendering the prohibited service.

The plaintiff has conceded he received his share of the partnership earnings for the year ending March 31, 1962, but that he has not received a percentage of the partnership earnings to which he claims he is entitled for the year ending March 31, 1963 plus damages for any breach during that period. He claimed his disability dates from March 31, 1962.

The controlling fact question in this connection is when the plaintiff became disabled. The trial court found the plaintiff was not permanently disabled on March 31, 1962 or any time prior thereto, which would entitle him to receive any additional pay-out after March 31, 1962, by reason of any disability under the agreement of March 7, 1960. This court has consistently held in this type of a case it reviews questions of fact most favorable to the findings of the trial court, and reverses only if the evidence or lack of it renders it clearly necessary to do so.

We find and conclude the record in this case justified the conclusions reached by the trial court.

Judgment of the District Court is affirmed.

McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, C. J., not participating.

CROCKETT, J., having disqualified himself, does not participate herein.

WADE, J., heard the arguments but died before the opinion was filed.