701 P.2d 304

**Elizabeth Mary CARR, Plaintiff-Respondent,**

v.

**Terry Arthur CARR, Defendant-Appellant.**

**No. 15177.**

Court of Appeals of Idaho.

May 31, 1985.

---

C.J. Hamilton (argued), Hamilton & Hamilton, Steve F. Bell, Coeur d'Alene, for defendant-appellant.

Sue S. Flammia (argued), Flammia & Solomon, Scott W. Reed, Coeur d'Alene, for plaintiff-respondent.

WALTERS, Chief Judge.

This appeal involves the disposition of property following a divorce decree. The issues concern the sale of a family business ordered by the magistrate in the action; the parties do not contest the division or distribution of any other assets. To resolve the parties' interests in the family business, the magistrate ordered a sale of the business and the proceeds divided between the parties. Orders by the magistrate, directing the husband to execute a sales agreement containing a covenant not to compete and to remove a sign on property adjacent to the business, were appealed by the husband to the district court. The district court affirmed. The husband appeals from the district court decision. We vacate the district court's decision in part and remand for redetermination of the value and the distribution of the business goodwill.

The issues presented on appeal may be stated as follows: (1) when a family business is sold to facilitate property distribution in a divorce, can a trial court order a spouse to agree to a noncompete clause in a sales agreement? (2) If so, can the trial court's order be enforced with a contempt proceeding? (3) What consideration should be given to the goodwill of a business ordered sold in a divorce action? (4) Can a trial court order a sign advertising a competing business to be removed from a former spouse's separate property until after the family business is sold? (5) Should either party to this appeal receive an award of attorney fees?

The background of this case is as follows. Elizabeth and Terry Carr were married in California in 1963. In 1975, the Carrs moved to Post Falls, Idaho, and purchased a one-half interest in the Husky Port Truck Stop located near Post Falls. They became sole owners of the truck stop in 1978. The business prospered under the Carrs' management; the physical plant was expanded and modernized, a shop to sell and service CB radios was added, tire and fuel sales increased, restaurant sales flourished. Terry Carr was manager of the entire operation except the restaurant, which was handled by Elizabeth. He worked twelve to fourteen hours a day at the business and was on call twenty-four

hours a day. In 1979, Elizabeth Carr filed for divorce. Terry Carr counterclaimed and the cause was tried before a magistrate.

Evidence was submitted concerning the value of the assets and the amount of outstanding liabilities of the truck stop. From this evidence, the magistrate determined the business had a net worth of $761,309. The magistrate assigned no value to "goodwill," concluding that "no credible evidence was presented at trial to support a finding that the business possesses any good will upon which a value can be placed." Terry Carr was given sixty days to purchase Elizabeth Carr's community interest in the truck stop, measured by one-half its fair market value. For this purpose, the magistrate treated the net worth of the business, $761,309, as its fair market value. In the event Terry Carr did not purchase his ex-wife's interest, the magistrate ordered the property to be sold and the proceeds divided. Subsequently, Terry Carr did not purchase his ex-wife's interest in the truck stop, and efforts to sell the business to a third party commenced.

■ Prospective purchasers insisted on a provision in the sales agreement limiting Terry Carr's ability to open a° competing business. One typical noncompete clause prohibited the Carrs for five years from opening a competing business within ten miles of Husky Port Truck Stop. Because Terry Carr owned property adjacent to the truck stop, he was opposed to a noncompete clause in any sales agreement, which would interfere with his planned use of the adjacent property. The magistrate ordered Terry Carr to execute a specific earnest money agreement containing a covenant to not compete and, when he declined to do so, the magistrate held Terry Carr in contempt of court. To prevent further contempt orders, Terry Carr did subsequently sign an earnest money agreement which contained a noncompete provision.[1] The magistrate

also ordered Terry Carr to remove a sign announcing a new truck stop business to open on the property adjacent to Husky Port Truck Stop. On appeal, the magistrate's orders were affirmed by the district court.

The district court, finding the noncompete covenant to be reasonable, upheld the covenant and concluded that it was within the magistrate's discretion to enter an order directing Terry Carr to agree to the noncompete provision. The district court declined to award additional compensation to Terry Carr for his agreement to not compete, by alteration of the magistrate's distribution of property or its proceeds. The district court viewed the magistrate's order to remove the sign as effective only while the sale of Husky Port was pending. The district court observed that, once the sale was completed, Terry Carr was free to replace the sign although replacement of the sign could generate an action to enforce the covenant not to compete. The magistrate's order regarding the sign was therefore upheld. The district court also upheld the magistrate's authority to enforce its orders by contempt proceedings.

■ We turn first to the issues concerning the sale of the truck stop. Unless there are compelling reasons to divide community assets unequally, the division of community property in a divorce proceeding should be substantially equal. I.C. § 32–712. Here the magistrate found there were compelling reasons to make an unequal division of the community property owned by the parties. We have not been asked to review the propriety of that determination. In regard to the truck stop, the magistrate ordered that Elizabeth Carr should receive the first $4,846 from the proceeds of the sale of the business and the balance divided equally.

1. Elizabeth Carr contends the issues regarding the noncompetition clause became moot when Terry Carr executed the sales agreement. It is clear Terry Carr agreed to the noncompete provision only to avoid further contempt orders.

In those circumstances, we hold the authority of the magistrate to order execution of the limiting clause and the subsequent finding of contempt should not bar appellate review of the issues raised herein.

The method by which the property is distributed is left to the discretion of the trial court, *Koontz v. Koontz,* 101 Idaho 51, 607 P.2d 1325 (1980), but ordinarily the trial court should divide the community property in such a way as to give each spouse the sole and immediate control of his or her share of the property. *Parker v. Parker,* 95 Idaho 876, 522 P.2d 788 (1974). Thus, to give each spouse the immediate control of his or her share of the property, the trial court may provide for the sale of community property so long as the sale order does not amount to waste of a community asset or provide that the property be sold for less than it is worth. *Id.* The trial court in a divorce proceeding may enforce its orders regarding property distribution with contempt proceedings. *See Phillips v. District Court of the Fifth Judicial District,* 95 Idaho 404, 509 P.2d 1325 (1973).[2]

In this case, the trial court ordered Terry Carr to execute an earnest money agreement containing a covenant to not compete for five years and within ten miles of Husky Port. Terry Carr subsequently was held in contempt of court for failing to sign the earnest money agreement.[3] As noted, when the magistrate made findings of the values of the various properties owned by the parties, the magistrate was not able, because of a lack of credible evidence, to assign any value to the goodwill component of the truck stop. *See Saviers v. Saviers,* 92 Idaho 117, 438 P.2d 268 (1968); *Loveland v. Loveland,* 91 Idaho 400, 422 P.2d 67 (1967) (no error where trial court failed to divide value of goodwill of community business in divorce actions when the evidence was insufficient to establish value of goodwill). Subsequently, however, because of the demands by purchasers for a covenant not to compete, we believe the existence of the goodwill achieved a much greater significance in determining an appropriate division of the parties' property interests. In effect, by ordering Terry Carr to execute the noncompetition clause, the magistrate was requiring that the goodwill of the truck stop business be sold along with the tangible assets and the accounts receivable.

In instances where a party sells his business, and, in connection with such sale, agrees that he will not engage in the same or similar business in the same area for a particular and reasonable length of time, it is obviously the intention on the seller's part to sell the good will of the business, even though the contract, as in this instance, fails to expressly mention good will. [Citations omitted.]

*Vancil v. Anderson,* 71 Idaho 95, 101, 227 P.2d 74, 77 (1951). Given the trial court's authority in a divorce action to order the sale of a community business to effectuate property disposition, the issue is whether a trial court may require a business's goodwill to be included in the sale. We hold that it may.

Our Supreme Court long ago recognized that the goodwill of a business "is a species of property subject to sale by the proprietor, and which may be sold by order of court...." *Harshbarger v. Eby,* 28 Idaho 753, 761, 156 P. 619, 621 (1916), quoting *Smock v. Pierson,* 68 Ind. 405, 34 Am.Rep. 269 (1879). Goodwill is an intangible business asset not easily defined.

**2.** Terry Carr cites *Phillips* for a broad proposition that the trial court may not issue any post-divorce orders unrelated to a former spouse's duty to support his wife or children. The proposition is erroneous. *Phillips* held the trial court's order of contempt did not violate art. 1, § 15 of the Idaho Constitution. That section prohibits imprisonment for debt. *Phillips* held an order of contempt, and subsequent imprisonment, for failure to satisfy a property settlement debt does not violate art. 1, § 15 if the debt was related to the former spouse's obligation to support his wife or children. *Phillips* does not preclude a trial court from issuing orders to effectuate a property disposition decree where the order, which might be enforced with contempt proceedings, does not direct payment of a debt.

**3.** The earnest money agreement signed by Terry Carr which eventually resulted in a sale of the business contained a covenant not to compete for five years within five miles of the Husky Port Truck Stop.

The "good will" value of any business enterprise is that value which results from the probability that old customers will continue to trade or deal with members of an established concern. It is the probability that old customers will resort to the old place or seek old friends, and the likelihood of new customers being attracted to well-advertised and favorably known services or goods.

Good will is the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds or property employed therein, in consequences of the general patronage and encouragement which it receives from constant or habitual customers on account of its location, or local position or reputation for quality, skill, integrity or punctuality. It is something in business which gives reasonable expectancy of preference in the race of competition.

Good will is property, so recognized and protected by law. As such it is subject to bargain and sale. [Footnotes omitted.]

*Jackson v. Caldwell,* 18 Utah 2d 81, 415 P.2d 667, 670 (1966). However it is defined, goodwill clearly is property that can be sold.

■■■ Further, goodwill of a business owned by a spouse may be community property, separate property or part community property and part separate property, depending on the circumstances. Separate property is all property owned by either spouse before marriage, and the property acquired afterward by gift, bequest, devise, or descent. I.C. § 32–903. Community property is all other property acquired after marriage by either spouse. I.C. § 32–906. Thus, to the extent it is acquired through the efforts of a spouse during marriage, the goodwill of a community owned business is community property. In this case, the Carrs did not have an interest in the truck stop until after they were married. All their labor on behalf of the business occurred during coverture. Accordingly, any goodwill value of the business was community property which should have been valued and distributed upon divorce.[4] *See Mueller v. Mueller,* 144 Cal. App.2d 245, 301 P.2d 90 (1956); *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980); *Matter of Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979). The magistrate did not err by ordering Terry Carr to execute a reasonable noncompetition agreement, thereby including the goodwill in the sale of the truck stop.[5] *See Lord v. Lord,* 454 A.2d 830 (Me.1983) (trial court could order the wife to execute a reasonable noncompetition clause to protect the goodwill of a business awarded to the husband).

■■■ The magistrate had initially concluded the value of Husky Port Truck Stop contained no component of goodwill. The business had not yet been sold and the proceeds divided in accordance with the magistrate's plan for distribution of the community assets, when the noncompete agreement became an issue in the divorce. As *Vancil v. Anderson, supra* indicates, the goodwill of a business is sold when the seller agrees to a noncompetition provision in the sales agreement. It is clear the purchasers here were interested in acquiring more than the real property, equipment, inventory, and accounts receivable of Husky Port Truck Stop. The purchasers also sought to purchase the business's goodwill, as is evident by their insistence upon a noncompetition clause in the sales agreement. On the record before us, we conclude that goodwill comprised a portion of the value of the truck stop and that the

4. There appears to be a split of authority as to whether the goodwill of a professional practice is a divisible or awardable asset in a divorce action. *See* ANNOT., 52 A.L.R.3d 1344 (1973). Because the case before us does not involve a professional practice, we do not decide that question today.

5. Terry Carr does not argue on appeal the distance and duration restrictions of the noncompetition clause are more than necessary to protect the truck stop's goodwill, making the clause unreasonable and thus invalid. *See Stipp v. Wallace Plating, Inc.,* 96 Idaho 5, 523 P.2d 822 (1974).

community-owned business, including its goodwill, was a community asset which should have been valued and distributed by the magistrate.

■ It remains to be determined whether the value received for goodwill should be divided equally. As already noted, the division of community property should be substantially equal unless there are compelling reasons to divide it unequally. Terry Carr insists that he is entitled to compensation for his agreement to not compete with the Husky Port Truck Stop. We agree that there may be compelling reasons in this case to justify an unequal division of the proceeds from the sale of the truck stop. It is clear Terry Carr was less willing than Elizabeth Carr to be restricted from opening another truck stop business. Terry Carr owned property suitable for another truck stop and he announced his intention to open a new business at the earliest opportunity. His sale of the goodwill of Husky Port Truck Stop may have significantly affected his occupation, amount and source of income, use of vocational skills, employability, and present and potential earning capability, all factors to be considered in determining whether a community property division should be equal. *See* I.C. § 32–712. When a family-owned business is sold to facilitate a property division in a divorce, we believe the trial court must consider the unique character of goodwill along with the factors in I.C. § 32–712 to determine whether the goodwill asset should be divided equally. The unique nature of goodwill, its sale by means of a noncompetition clause, its varying importance to the separate individuals of the marital community, and the effect of its sale on the section 32–712 factors may constitute compelling reasons to divide the value received for goodwill unequally. Because the magistrate did not consider the goodwill of Husky Port Truck Stop after the property was sold subject to the noncompete agreement, we vacate the property distribution decree regarding the truck stop. On remand, the trial court must determine the value received for the goodwill of the business, and must carefully consider the factors listed in I.C. § 32–712 to determine whether an unequal division of the amount received for the goodwill is appropriate. The court should also consider the tax consequences (if any) to the Carrs, vis-a-vis each other and vis-a-vis the buyer of the truck stop, resulting from differing treatment, for tax purposes, of goodwill and of covenants not to compete.

■ We decline to determine Terry Carr's contention that the magistrate erred by ordering the removal of the sign from property adjacent to the truck stop. Removal of the sign was ordered to avoid discouraging prospective vendees from making offers to purchase the truck stop. Because the removal order was effective only while the sale of Husky Port Truck Stop was pending, and the sale has since been completed, the propriety of the removal order is moot; although, as noted by the district court, replacement of the sign may be viewed as a breach of the noncompete agreement. Thus, our discussion of the issue would resolve no actual controversy. We decline to issue advisory opinions. *See Radermacher v. Eckert,* 63 Idaho 531, 123 P.2d 426 (1942).

Both parties seek an award of attorney fees on appeal. The award of attorney fees in a divorce action is controlled by I.C. § 32–704. Because of the remand to determine the disposition of the goodwill component of the Husky Port Truck Stop we are faced with an incomplete record upon which we can consider the factors required under I.C. § 32–704 in order to award attorney fees. Therefore, we instruct the trial court on remand to determine whether an award of attorney fees, for this appeal, should be made to either party. *See, e.g., Donndelinger v. Donndelinger,* 107 Idaho 431, 690 P.2d 366 (Ct.App.1984).

The district court's order affirming the magistrate's distribution of Husky Port Truck Stop proceeds is vacated. The cause is remanded to ascertain the proceeds attributable to the goodwill of the business and to determine an appropriate division of

those proceeds. Costs to appellant, Terry Carr.

BURNETT, J., concurs.

SWANSTROM, J., dissenting in part.

I would affirm the district court's order in total. The majority remands for the trial court to redetermine the value of goodwill. However, there is no real equation which the trial court can apply to relate the value of goodwill to the amount, if any, the husband should be paid for his agreement not to compete. That is because, as the majority opinion correctly shows, goodwill is comprised of many variable components. There is no definite relationship between goodwill and a covenant not to compete unless the parties to a transaction agree both as to the value of the goodwill and the value of the covenant. This determination is not made without the participation of the buyer, as well as the sellers. Here, the sale has been completed; the purchase price fully paid.

The husband contends in the trial court that the goodwill of the business had no separate value. From evidence already presented once, the magistrate was unable to assign any separate value to goodwill. I see little to be gained by a remand on this point. The fact remains that after the trial court has made its new determination of the value of the goodwill, whether it is $1 or $100,000, there will be no additional dollars available for distribution from the sale of the community business. This is not a case where an asset was omitted from the distribution or not considered.

Finally, the husband's contention that he is entitled to a greater share of the sale proceeds because of his agreement not to compete is not convincing in light of his previous conduct. First, he took the untenable position of trying to sell the business, with the expectation of obtaining the best price, while advertising to the world his intention to open a competing business on adjoining property. Regardless of whether the business to be sold has any ascertainable goodwill value, a reasonable and prudent purchaser would not agree to pay as much—if indeed he would purchase at all—under such circumstances.

Had the husband here wanted to continue in the operation of this type of business at the same location he could have done so. The trial court allowed him every reasonable opportunity to purchase the wife's interest in the business. This included at least one opportunity to meet the bona fide offer of a prospective purchaser. The husband first said that he would and later he declined. Now, he wants to be compensated for not being able to compete in close proximity to the business he left. I am not persuaded that there is any legal or equitable grounds for a remand.