873 P.2d 857

**Thomas E. OLSEN, Plaintiff–Respondent,**

v.

**Carol L. OLSEN, Defendant–Appellant.**

No. 19981.

Supreme Court of Idaho,
Boise.

April 4, 1994.

Rehearing Denied June 3, 1994.

Schroeder & Lezamiz Law Office, Boise, for plaintiff-respondent. John T. Schroeder, argued.

Cantrill, Skinner, Sullivan & King, Boise, for defendant-appellant. Gardner W. Skinner, Jr., argued.

JOHNSON, Justice.

This is a divorce case. The issue presented on appeal concerns the valuation of interests in closely held corporations owned by the parties as community property. We conclude that the trial court used inappropriate rates to capitalize excess earnings and to discount for marketability in determining the value of the marital interests in the closely held corporations.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Thomas Olsen and Carol Olsen were married from 1967 until their divorce in 1989. The property to be valued at the time of their divorce included their interests in Olsen Livestock Consultants, Inc. (OLC), GMO Livestock Products, Inc. (GMO), and Nutri–Plus, Inc. (Nutri–Plus). The Olsens owned all of OLC, one-third of GMO, and one-half of Nutri–Plus. Mr. Olsen's education and work experiences were in animal nutrition. He used this background in developing the business of these corporations, and planned to retain the interests and continue working with the corporations after the divorce. At a trial before the magistrate judge (the trial court), each party submitted expert opinion concerning the valuation of the Olsens' interests in the corporations.

Mr. Olsen's expert focused on determining the fair market value of the corporations assuming an exchange between a willing buyer and a willing seller as reflected by the corporations' tangible assets. Mrs. Olsen's expert underscored the going concern nature of the corporations, emphasizing that when a going concern is valued primary emphasis is placed on earnings, rather than tangible assets, to ascertain the good will of the business.

Mr. Olsen's expert valued the corporations by computing the excess earnings of each corporation, applying a capitalized earnings value formula to the excess earnings, and then discounting the product of the capitalized earnings value for marketability. Mr. Olsen's expert then weighted this result and the fixed asset value of the corporations to arrive at the value of the corporations.

Mrs. Olsen's expert valued GMO and Nutri–Plus by calculating the excess earnings of the corporations and then applying three different formulas, the multiple earnings formula, the present value cash flow formula, and the capitalized excess earnings formula, averaging the values ascertained by each formula. In Valuing OCL, Mrs. Olsen's expert used the same average excess earnings that Mr. Olsen's expert used, but used a different

capitalization rate and discount rate for marketability than Mr. Olsen's expert used. Also, Mrs. Olsen's expert did not weight this result and the fixed asset value in arriving at a value for OLC.

Each expert acknowledged that the capitalized earnings method was an appropriate method to ascertain the value of the corporations. Mr. Olsen's expert acknowledged that the "capitalized earnings approach would be appropriate," and Mrs. Olsen's expert admitted that he "used the capitalized earnings method to evaluate the value of" the corporations. In applying the capitalized earnings formula, each expert also applied a market discount to the value of the corporations to reflect the lack of market transferability of the corporations due to risky stock salability and "key man" risks.

In its decision, the trial court rejected the approaches taken by the experts of both parties. The trial court stated that the valuation of Mr. Olsen's expert overemphasized "key man" and "marketability" factors. The trial court rejected the valuation of Mrs. Olsen's expert, because, in the trial court's opinion, it was based on values to Mr. Olsen after the divorce, rather than on values to a willing buyer.

The trial court determined the values of the corporate interests by applying the capitalization rate of Mr. Olsen's expert to excess average earnings of the corporation for what the trial court found were the most representative years. The excess average earnings equals the business' income less its expenses. Expenses include an appropriate salary, the amount necessary to enable the corporation to employ someone to replace Mr. Olsen. The trial court then multiplied the excess average earnings by the capitalization rate used by Mr. Olsen's expert to obtain a present dollar value of the business' future income stream, called the capitalized excess earnings value. Finally, the trial court applied the market discount employed by Mr. Olsen's expert to the capitalized excess earnings value for lack of marketability, but refused to weigh the net asset value and capitalized value factors in the same manner as Mr. Olsen's expert, which would have result-

ed in a further downward adjustment of the value of the business.

Mrs. Olsen appealed to the district judge, who affirmed the trial court. Mrs. Olsen then appealed to this Court.

## II.

## THE TRIAL COURT USED INAPPROPRIATE RATES TO CAPITALIZE EXCESS EARNINGS AND TO DISCOUNT FOR MARKETABILITY IN DETERMINING THE VALUE OF THE MARITAL INTEREST IN THE CLOSELY HELD CORPORATIONS.

In her opening brief, Mrs. Olsen states the issue in this appeal to be:

Whether the trial court should have used a "going concern" approach rather than a "fair market value" approach in valuing the closely held corporations involved in this action.

We find a more tightly focused statement of this issue in her following argument:

The proper measure of the value of the corporations owned by the Olsens is not the price (if any) that could be obtained in a sale to a third party. The proper measure is, rather, the "value to [Mr. Olsen]" who "enjoys the benefits of the good will."

Mrs. Olsen concedes that the trial court did, in fact, use an earnings based approach to place some value on the good will of the corporations and did not simply equate the value of the corporations with the value of their tangible assets. She argues:

However, the trial court's subsequent capitalization and discounting of the earnings was excessive. The trial court's method did not produce an accurate estimation of the true value of the corporations to the marital community.

We agree.

We first note that none of these corporations is a professional service corporation. Therefore, we are not required to wrestle with the valuation of the good will of a professional practice. *Cf. Carr v. Carr*, 108 Idaho 684, 689 n. 4, 701 P.2d 304, 309 n. 4 (Ct.App.1985).

The arguments by both of the parties in this case have at times used the terms "fair market value" and "going concern value" as two separate methods of valuing a business. A "going concern" valuation is simply one method used to place some value on the good will of a corporation. There are several methods used to ascertain the "going concern" or "good will" value of a business. The methodology used by the trial court and by both parties' experts in this case to some degree was the "capitalized excess earnings method." This method is especially helpful in calculating the value of a business featuring the sale of services rather than tangible assets. Under the capitalized excess earnings method, the value of a business is determined by multiplying the net excess earnings of the business by a predetermined capitalization rate to obtain a present value of the future income stream likely to be generated by the business. Mr. Olsen's expert recognized the merit of this method, stating that he used a combination "capitalized earnings approach and a net asset value approach" to determine the value of the corporations. Mrs. Olsen's expert also acknowledged the worth of the capitalized excess earnings method, choosing to employ "three separate formulas," including the capitalized excess earnings formula, and averaged the values derived.

In this case, using the capitalized excess earnings method, the trial court accepted the salary to replace Mr. Olsen used by both Mr. Olsen's expert and Mrs. Olsen's expert. This salary was deducted from the net income of the business to compute the business' net excess earnings. On appeal, neither party finds fault with the appropriate salary applied nor with the net excess earnings used by the trial court.

The premise for the determination of an appropriate salary is that this is the sum that would attract a new employee to replace the owner and operator. The salary compensates the managing spouse for the "knowledge, background and talent" contributed to the business' profit, personal assets which this Court has held are not community property. See *Wolford v. Wolford*, 117 Idaho 61, 67, 785 P.2d 625, 631 (1990).

In determining the value of OLC, the trial court stated:

The earnings of this business are almost entirely dependent upon the personal skill, experience, and reputation of (Mr. Olsen). To use (Mrs. Olsen's expert's) value is to force (Mr. Olsen) to share his future earnings capacity with (Mrs. Olsen).

The skill, experience, and reputation of Mr. Olsen had been determined by the ascribing of a salary to replace him that was used in arriving at the excess earnings determination. Therefore, the value of the good will of the corporation determined by using the capitalized excess earnings method, accounted for the value of Mr. Olsen's personal skill, experience, and reputation. The trial court should not have used Mr. Olsen's expert's capitalization and marketability discount rates to the capitalized excess earnings value.

This Court has held that "good will" is an appropriate factor in determining the value of a business. "The good will of a business is the custom which it attracts, and the benefits or advantage it receives from constant or habitual customers, and the probability that old customers will continue to come to the place." *Harshbarger v. Eby*, 28 Idaho 753, 761, 156 P. 619, 621 (1916) (quoting from *Johnson v. Friedhoff*, 7 Misc.Rep. 484, 27 N.Y.S. 982 (1884)). The capitalized excess earnings approach is an appropriate means of arriving at a determination of good will to be utilized in valuing enterprises such as GMO, OLC and Nutri–Plus.

The trial court should not have employed a capitalization rate and a discount rate for marketability that reduced the value of the corporations based on the concept that lower rates would force Mr. Olsen to share his future earnings with Mrs. Olsen. The salary the parties both used for the replacement of Mr. Olsen accomplished this. What remained for the trial court was to determine the appropriate rates to capitalize excess earnings, and the appropriate rate, if any, to discount for marketability in order to ascribe an appropriate value to the corporations.

## III.

## CONCLUSION.

We vacate the trial court's decision valuing the closely held corporations and remand the

case to the trial court for further proceedings based on the existing record before the trial court.

We award costs on appeal to Mrs. Olsen.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.