# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 34915

| | |
|---|---|
| SUSAN CAROL OLSON, fka SUSAN CAROL MONTOYA, | ) ) |
| | ) |
| Plaintiff-Respondent-Cross-Appellant, | ) ) |
| | ) |
| v. | ) ) |
| MARVIN RAYNELL MONTOYA, | ) ) |
| | ) |
| Defendant-Appellant-Cross-Respondent. | ) ) ) |
| | ) |

2009 Opinion No. 58

Filed: August 14, 2009

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. D. Duff McKee, District Judge; Hon. Russell A. Comstock, Magistrate.

Appellate decision of the district court, vacating magistrate's child support award and remanding to the magistrate for further findings, <u>reversed</u>.

Strother Law Office, Boise, for appellant. Jeffrey A. Strother argued.

Bevis, Thiry & Schindele, P.A., Boise, for respondent. James A. Bevis argued.

_____

LANSING, Chief Judge

In this divorce case, Marvin Raynell Montoya appeals from the district court's intermediate appellate decision vacating the magistrate's child support award on the ground that the magistrate failed to consider all relevant factors in computing Montoya's income from three companies that he owns. Respondent Susan Carol Olson seeks this Court's review of the magistrate's subsequent denial of her motion for attorney fees.

## I.

## FACTS AND PROCEDURE

Montoya and Olson were married in 2001, and two children were born of the marriage. The couple separated in December 2005, and Olson filed a complaint for divorce in February 2006. The parties were able to resolve all issues concerning custody and property division,

leaving only two issues for resolution by the magistrate: (1) the amount of Montoya's income for purposes of an award of child support to Olson, and; (2) Olson's request for attorney fees pursuant to Idaho Code § 32-704.

The following evidence was presented at the trial on child support. Montoya is the sole owner of three business entities, all of which are and have always been his separate property. Two are corporations that have been in existence for a number of years: MST Insurance Agency, Inc. ("MST"), which sells insurance products, and MS Administrative Services, Inc. ("MS"), which earns income by administering health plans for MST and other entities. Before the marriage broke down, Montoya and Olson planned that Olson would leave her employment at a law firm and begin working for MS and MST, with the expectation that those two companies would expand and grow. This plan called for construction of a new building to provide the larger space that would be needed for the expansion of MS and MST. Toward that end, Montoya formed a third company, Montoya Enterprises, LLC ("ME"), to construct and own the building. ME borrowed over $2 million and built a commercial building, completing construction in August 2005. At that time, MS and MST, which previously rented space from a third party, moved into ME's new building and paid rent at a significantly higher rate than previously paid to the third party.[1] Montoya is the personal guarantor of the debts of all three of his companies. Montoya testified that approximately six months after the move to the new building, he was "blindsided" when Olson asked for a divorce.

For purposes of calculating Montoya's child support obligation, the parties agreed that his then current salary from MS was $109,080. Olson contended, however, that Montoya had additional income from MST in the amount of $165,296. She arrived at this figure by using the couple's 2005 personal income tax return, in which business income, after expenses, was reported to be this amount. Montoya, on the other hand, presented evidence that MST's 2005 income did not reflect its income stream at the time of the September 2006 trial because MST had recently lost three large clients, including the firm that was Olson's employer, resulting in lost revenue of approximately $128,000. Olson presented no evidence refuting this testimony. Montoya's evidence also indicated that MST's profits were further reduced from the 2005 level

---

[1]     Other entities also rented space in ME's building, but as of the time of trial, some of the space remained vacant.

2

because MST and MS now paid rent of $20,000 per month to ME for the new offices as compared to $6,500 per month that had been paid to their previous landlord. Montoya and MS's comptroller testified that the $20,000 monthly rent paid to ME was necessary to enable ME to service its debt on the building and avoid bankrupting ME. Montoya testified that the additional rent expense further reduced his personal income. Olson contended, generally, that this increased rent payment was a sham designed to avoid the imputation of income to Montoya for child support purposes.

The magistrate accepted Montoya's testimony that, because of business circumstances of the three companies, he would only be able to take $22,599 in compensation from MST during 2006. Using this amount together with Montoya's salary of $109,080 from MS and other income not in dispute here, the magistrate determined Montoya's income for child support purposes to be $140,339. Pertinent to this determination, the magistrate stated in his findings:

> During the parties' marriage, they discussed Susan having a significant role in the operation of the insurance businesses. The real property on which ME later constructed the office building was purchased several years prior to the initiation of this divorce action. Construction of the office building was completed in the late summer or early fall of 2005, approximately six months prior to this divorce action being filed. The court is persuaded that monies generated by MST and MS, from which commissions were previously paid to Marvin, are required to be paid to ME as rent which, in turn, service the mortgage and maintenance costs of operating an office building that did not exist in prior years. Thus, the court does not find merit in the argument that Marvin, individually or through his entities, has deliberately invested in assets and formed entities to conceal income.
> Susan attempted to impeach the evidence and testimony offered by Marvin and his two accountants but did not offer independent evidence. The best evidence in the record regarding the fairness of Marvin's salary, the income generated by his closely held entities and the reasonableness of the ordinary and necessary expenses of the entities was offered by Marvin and [his companies' financial professionals].

The magistrate also denied Olson's motion for attorney fees under I.C. § 32-704, concluding that she had sufficient income and financial resources to pay for her own attorney fees incurred throughout the proceedings.

Olson appealed to the district court, which vacated the magistrate's decision concerning Montoya's income. Although the district court acknowledged that "[t]here is no issue here of anyone hiding or disguising any element of income or expense," it also held that the magistrate erred, stating:

3

It appears that [MS and MST] in prior years paid significantly less per month in occupancy expenses--rent and maintenance to a third party for the needed office space--whereas in the new building, which the husband will own, the businesses were paying occupancy expenses in the amount of $20,000 per month--largely to service the large mortgage.

. . . .

. . . What is missing from the trial court's analysis below is an evaluation of whether the new level of occupancy expense -- $20,000 per month instead of the much lower figure -- was a "necessary and reasonable" business expense to impose on the business. To the extent that the amount was not reasonable and necessary to the generation of income from the business entities, then the excess amount was money that was going to enhance the husband's separate property interests. In connection with child support calculations, this excess would appear to equate to "rent" from separate property interests, and should be included in the calculation of the husband's resources for child support purposes -- even though it might appear that the money was being applied to the mortgage debt.

. . . The only issue here is whether, after consolidating all of the business operations and eliminating the intercompany accounts, the moneys applied to the separate debt of the husband -- the $2.2 million mortgage debt on the office building -- should come before or after consideration of the husband's child support obligation.

The money that is equivalent to the reasonable business occupancy expense of the businesses being operated by the husband out of the space, and which is being paid over to a third party in the form of interest on the mortgage, is an adjustment to the husband's income level before consideration of child support. However, money being paid in excess of that reasonable to the business, or which reduces the debt and enhances the husband's separate property interest, should be attributable to the husband's separate property interest in the realty and should not be applied to reduce his income for purposes of child support determination. In this case, there is not an analysis or finding on how much of the money attributable to the occupancy expense of the new building was within the definition of reasonable and ordinary business expense of the business operations, and how much was attributable to enhancement of the husband's separate property interests. The amounts may be significant, and require a reversal to reconsider the issue.

Montoya timely appealed from the district court's decision.

While Montoya's appeal was pending, Olson filed another motion in the magistrate court for an award of attorney fees pursuant to I.C. § 32-704. This time she requested attorney fees incurred at trial, on appeal to the district court and on the further appeal to this Court. The magistrate again denied the motion, concluding that Olson had sufficient income and resources to pay for her own attorney fees and that the disparity in income between the parties was not so great as to dictate a different conclusion. Thereafter, Olson filed a notice of cross-appeal,

4

seeking to appeal from the magistrate's order directly to the Idaho Supreme Court under Idaho Appellate Rule 12.1.

## II.

## ANALYSIS

### A.    Montoya's Appeal from the District Court's Intermediate Appellate Decision

Montoya challenges the district court's holding that the magistrate did not adequately consider relevant factors in calculating Montoya's income for child support purposes. A district court sitting as an appellate court is required to review a magistrate's award of child support under an abuse of discretion standard, *Browning v. Browning*, 136 Idaho 691, 39 P.3d 631 (2001); *Aguiar v. Aguiar*, 142 Idaho 331, 127 P.3d 234 (Ct. App. 2005), and the party challenging that award bears the burden of establishing an abuse of discretion. *Henderson v. Smith*, 128 Idaho 444, 915 P.2d 6 (1996). Such an abuse will be found if the magistrate failed to consider relevant evidence, *Rohr v. Rohr*, 128 Idaho 137, 141, 911 P.2d 133, 137 (1996); *Margairaz v. Siegel*, 137 Idaho 556, 558, 50 P.3d 1051, 1053 (Ct. App. 2002), but only if that evidence exists in the record. *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007).

The district court here concluded that the magistrate had failed to properly consider whether the $20,000 monthly rent paid by MS and MST to ME was a reasonable and necessary expense of the lessee companies and whether ME's mortgage payments resulted in enhancement of ME's equity in the building and, thus, an increase in Montoya's personal net worth which should be counted as income to him. Montoya contends that the district court's analysis is flawed and that, even if it were correct, because Olson failed to present any trial evidence on these matters the magistrate could not have erred by failing to carefully review them. We agree that the district court erred.

First, there is insufficient evidence in the record from which the magistrate could have complied with the district court's directive to determine how much of the rental paid for offices in ME's new building was "necessary and reasonable" if by that term the district court means the fair rental value of the occupied space. The record contains evidence of what MS and MST historically paid to a third party for rent, $6,500, and what they were paying ME, $20,000, and evidence that the latter amount was necessary to allow ME to service its mortgage debt. There is no evidence, however, of the number of square feet, the amenities, the market rate for the space or any other details of the space rented previously or in the new ME-owned building. A mere

5

comparison of the prior and current rental would not have allowed the magistrate to determine the fair market value of the space MS and MST occupied in the ME building. Therefore, the magistrate could not have abused its discretion in failing to make findings on that point.

Likewise, although the trial testimony indicates the amount of the mortgage loan and the monthly payments, we find no evidence about how the monthly payments were distributed between interest and principal. Therefore, the magistrate could not have determined the growth of ME's equity in the structure.

From the evidence that did exist, the magistrate found that "the best evidence in the record regarding the fairness of Montoya's salary, the income generated by his closely held entities and the reasonableness of the ordinary and necessary expenses of the entities was offered by Montoya [and his companies' financial professionals]" and that "the court is persuaded that monies generated by MST and MS, from which commissions were previously paid to Montoya, are required to be paid to ME as rent which, in turn, service the mortgage and maintenance costs of operating an office building that did not exist in prior years." The magistrate also specifically said that "the court does not find merit in the argument that Montoya, individually or through his entities, has deliberately invested in assets and formed entities to conceal income." Thus, the magistrate did consider, on the evidence available, the validity of rental and mortgage payments and found them to be reasonable and necessary business expenses.

Moreover, even if there were sufficient evidence in the record by which the magistrate could have employed the necessary and reasonable rental expense methodology suggested by the district court, determination of the reasonable rental value of the space occupied by MS and MST would not be necessary. As the district court observed, Montoya's income from his three business entities could be calculated by "consolidating all of the business operations and eliminating intercompany accounts," i.e., by consolidating the collective receipts of the companies and deducting their collective expenses to compute their consolidated net income. This is the approach prescribed by Idaho Child Support Guideline (I.C.S.G.) § 6(a)(2), for computing income derived from a trade or business.[2] Ordinarily, under this guideline, the

---

[2]     Idaho Child Support Guideline Section 6(a)(2), found at Idaho Rule of Civil Procedure 6(c)(6), states in relevant part:
> For rents, royalties, or income derived from a trade or business (whether carried on as a sole proprietorship, partnership, or closely held corporation), gross

profits[3] for each of Montoya's closely held corporations would be calculated by determining the gross receipts of each company and deducting its ordinary and necessary expenses. Montoya's income from the operation of his businesses for child support purposes would therefore be the total of the three companies' profits and losses. When calculating Montoya's income from all three companies on this unified basis, there is no need to consider payments between the companies because a payment constituting a deductible business expense of the payor company also constitutes an includable receipt to the payee company. The expense for one is offset by income to the other. Here, the $20,000 monthly rent paid by MS and MST is an expense deductible from the gross receipts of those companies, but also constitutes a receipt in the same amount for ME. Perhaps intercompany transactions could be a method to conceal income. Here, however, the evidence in the record demonstrates that ME was experiencing a shortfall or loss. MS and MST made up the deficit through their rental payments to ME. The income potential to Montoya was only the net of the combined profits and losses of the three companies. Neither the magistrate nor the district court found any evidence of an attempt to conceal income in these intercompany transactions.

In any event, Olson did not seek at trial to calculate Montoya's income by using the combined profits of all three of his companies. Instead, she contended that Montoya's income in addition to his MS salary should be $165,296, the profit of *only* MST for the prior tax year.

---

income is defined as gross receipts minus ordinary and necessary expenses required to carry on the trade or business or to earn rents and royalties. Excluded from ordinary and necessary expenses under these Guidelines are expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support. In general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine the level of gross income of the parent to satisfy a child support obligation.

[3]     The Child Support Guidelines refer to a parent's total income on which child support obligations are to be calculated as "gross income." I.C.S.G. § 6(a)(1). This same term, "gross income," is used in I.C.S.G. § 6(a)(2) when addressing income from a trade or business. It states that "gross income is defined as gross receipts minus ordinary and necessary expenses required to carry on the trade or business . . . ." Thus, business profit that in general parlance would be referred to as "net income" is referred to in the Guidelines as "gross income." To avoid possible confusion from this terminology, in this opinion we will refer to the gross receipts of Montoya's companies, minus their ordinary and necessary expenses, as "profits."

7

Olson's theory of Montoya's income calculation did not follow the methodology prescribed in I.C.S.G. 6(a)(2) and literally ignored the receipts and expenses of both MS and ME.[4] The magistrate decided the issue on the evidence presented, using Montoya's salary from MS and finding Montoya's testimony concerning MST's current income and expenses to be credible.

For these reasons, the magistrate court did not abuse its discretion. The district court's appellate opinion is reversed and the magistrate's judgment reinstated.

**B.      Olson's Attempted "Cross-appeal"**

The district court's appellate decision was issued on December 6, 2007, but a remittitur to the magistrate division was not issued because on January 7, 2008, Montoya filed a notice of appeal from the district court's appellate decision. Olson did not file a cross-appeal from that decision. Instead, on January 29, 2008, she filed a second motion in the magistrate court for attorney fees under I.C. § 32-704, this time seeking fees incurred in the trial, on appeal to the district court, and on the pending appeal from the district court's decision. The magistrate denied Olson's motion in its entirety, concluding for the second time that she had sufficient income and resources to pay for her own attorney fees and that the disparity in income between the parties was not so great as to dictate a different conclusion. Thereafter, Olson attempted to perfect a permissive "cross-appeal" from the magistrate's order directly to the Idaho Supreme Court pursuant to Idaho Appellate Rule 12.1. Her claim of error was briefed by the parties as an ordinary cross-appeal. The case was ultimately assigned to this Court under I.A.R. 108.

We conclude that we do not possess jurisdiction to hear Olson's attempted appeal because bypassing the district court in this manner is not permitted by governing rules.[5] Appeals from decisions of a magistrate must ordinarily be taken first to the district court. I.R.C.P. 83(a). Olson sought to bypass the district court in this case by invoking I.A.R. 12.1. That rule

---

[4]      Olson may have taken this approach because Montoya predicted that MS would lose money during the year of the trial and because ME's profit in 2005 was $975.

[5]      Although neither party raised this jurisdictional issue, a question of subject matter jurisdiction may be raised sua sponte by this Court at any time. *Dep't of Health & Welfare v. Doe I*, 147 Idaho 314, 315, 208 P.3d 296, 297 (2009); *Erickson v. Idaho Bd. of Registration of Professional Engineers and Professional Land Surveyors*, 146 Idaho 852, 854, 203 P.3d 1251, 1253 (2009). The parties were notified of the perceived jurisdictional defect and allowed to address it at oral argument.

8

authorizes appeals directly from a magistrate's decision to the Supreme Court, by permission of the Supreme Court, in certain limited circumstances and only from orders "involving the custody of a minor, a Child Protective Act proceeding, the termination of parental rights, or an adoption . . . ." I.A.R. 12.1(a).[6] Because the magistrate's order denying Olson's request for

---

[6]     At relevant times Idaho Appellate Rule 12.1 stated in its entirety:

Rule 12.1. Permissive appeal in custody cases.
     (a) Whenever the best interest of a child would be served by an immediate appeal, any party or the magistrate hearing a case may petition the Supreme Court to accept a direct permissive appeal of a judgment or order involving the custody of a minor, a Child Protective Act proceeding, the termination of parental rights, or an adoption, without first appealing to the district court.
     (b) Motion to magistrate court.  In any case in which it is a party seeking the permissive appeal, a motion for permission to appeal must first be filed with the magistrate court within fourteen days from the date of entry of the order or decree.  The motion shall be filed, served, noticed for hearing and processed in the same manner as any other motion, and hearing of the motion shall be expedited.  The magistrate court shall, within fourteen (14) days after the hearing, enter an order approving or disapproving the motion.
     (c) Motion to Supreme Court for permission to appeal.
     (1) Motion of a party.  Within fourteen (14) days from entry by the magistrate court of an order approving or disapproving a motion for permission to appeal under this rule, any party may file a motion with the Supreme Court requesting acceptance of the appeal by permission.  A copy of the order of the magistrate court approving or disapproving the permission to appeal shall be attached to the motion.  If the magistrate court fails to rule upon a motion for permission to appeal within twenty-one (21) days from the date of the filing of the motion, any party may file a motion with the Supreme Court for permission to appeal without any order of the magistrate court.
     (2) Motion by order of court.  A magistrate court may enter, on its own initiative, an order recommending permission to appeal directly to the Supreme Court.  The magistrate court shall file a certified copy of its order with the Supreme Court and serve copies on all parties.  The order recommending permission to appeal shall constitute and be treated as a motion for permission to appeal under this rule.
     (3) Procedure.  A motion to the Supreme Court for permission to appeal under this rule shall be filed, served, and processed in the same manner as any other motion under Rule 32 of these rules.
     (d) Acceptance by Supreme Court.  Any appeal by permission of a judgment or order of a magistrate under this rule shall not be valid and effective unless and until the Supreme Court shall enter an order accepting such judgment or order of a magistrate, as appealable and granting leave to a party to file a notice of appeal within a time certain.  Such appeal shall thereafter proceed in an

attorney fees does not fall within the scope of Rule 12.1, her only appellate recourse was an appeal to the district court pursuant to I.R.C.P. 83. Therefore, this Court possesses no jurisdiction to hear her attempted appeal and it must be dismissed.[7] *See Dep't of Health & Welfare v. Doe III*, 147 Idaho 357, 358-59, 209 P.3d 654, 655-56 (2009); *Dep't of Health & Welfare v. Doe I*, 147 Idaho 314, 316, 208 P.3d 296, 298 (2009).

**C.      Attorney Fees on Appeal**

Olson requests attorney fees on appeal under I.C. § 12-121, which authorizes an award of attorney fees to the prevailing party if the appeal was brought, pursued or defended frivolously, unreasonably and without foundation. *Stewart*, 143 Idaho at 681, 152 P.3d at 552; *Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956, 962 (1995). Because Olson is not the prevailing party, her request is denied.

Olson also requests attorney fees on appeal under I.C. § 32-704(3). That statute provides that in a divorce proceeding the court may from time to time, after considering the financial resources of both parties and other factors enumerated in I.C. § 32-705, order one party to pay a reasonable amount for the other party's attorney fees. Olson asserts that the disparity between her income and Montoya's income, and her lack of other sufficient financial assets, compels an award in her favor.

In addressing a similar request for an award of attorney fees incurred on appeal under the authority of I.C. § 32-704, our Supreme Court has stated: "It is the policy of this court . . . to leave the award of attorney fees [under I.C. § 32-704] to the trial court, 'and to exercise its original jurisdiction only upon a showing that such action is necessary to the exercise of its

---

expedited manner. The clerk of the Supreme Court shall file with the magistrate court a copy of the order of the Supreme Court granting or denying acceptance, and shall mail copies to all parties to the action or proceeding.

[7]      Even if the magistrate's order on attorney fees *were* subject to I.A.R. 12.1, Olson did not perfect an appeal in compliance with its provisions. Her motion to the magistrate for permission to appeal directly to the Supreme Court was not filed within fourteen days from entry of the magistrate's order as required by I.A.R. 12.1(c)(1), and she did not follow that with any motion to the Supreme Court. Rule 12.1(d) specifies that any permissive appeal brought under the rule will be valid only if the Supreme Court issues an order granting leave for the party to file a notice of appeal.

appellate jurisdiction.'" *Stewart*, 143 Idaho at 681, 152 P.3d at 552 (quoting *Wilson v. Wilson*, 131 Idaho 533, 537, 960 P.2d 1262, 1266 (1998)). Thus, Idaho appellate courts will not ordinarily order attorney fees under section 32-704 unless an award is essential to enable the exercise of appellate jurisdiction.

Here, the magistrate held that Olson was not entitled to attorney fees under the statute to pursue or defend an appeal either to the district court or to this Court, and Olson did not properly perfect an appeal from that decision. Without any award of attorney fees for appellate proceedings, Olson has been able to respond to Montoya's appeal to this Court, pursue a second motion for attorney fees before the magistrate, and, albeit improperly, present argument on appeal challenging the magistrate's denial of that second motion. She has not demonstrated that an attorney fee order from this Court is necessary for the exercise of our appellate jurisdiction. Her request for attorney fees on appeal is therefore denied. *See Wilson*, 131 Idaho at 537, 960 P.2d at 1266; *Brashear v. Brashear*, 71 Idaho 158, 165, 228 P.2d 243, 247 (1951).

Montoya also requests attorney fees on appeal under I.C. § 12-121, asserting that Olson's position in the appellate proceedings is frivolous in that she has only invited the appellate court to second guess the trial court's factual findings. Although Montoya has prevailed on all issues in these appeals, we cannot say that Olson's defense to Montoya's appeal was frivolous. Therefore, his request is denied.

### III.
### CONCLUSION

The district court's appellate decision vacating the magistrate's determination of child support is reversed, and Olson's cross-appeal is dismissed. Costs on appeal are awarded to Montoya.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**

11